[Cite as *State v. Amodio*, 2012-Ohio-2682.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

STATE OF OHIO

    Appellee

v.

TONI J. AMODIO

    Appellant

C.A. No.     11CA0048-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.     10CR0387

DECISION AND JOURNAL ENTRY

Dated: June 18, 2012

---

MOORE, Judge.

{¶1} Defendant-Appellant, Toni Amodio, appeals from her conviction in the Medina County Court of Common Pleas. This Court affirms.

I.

{¶2} Amodio met Christopher and Kristin Vanhauter ("the Vanhauters") in her drug treatment program and began living in the basement of their home at 532 Wolf Avenue in Wadsworth. On July 22, 2010, the Medway Drug Enforcement Agency ("Medway") executed a search warrant at the residence. The search of the basement uncovered two burnt spoons coated with residue and multiple syringes. The residue later tested positive for Oxycodone.

{¶3} A grand jury indicted Amodio on one count of knowingly possessing Oxycodone, in violation of R.C. 2925.11(A)(C)(1)(a). Amodio filed a motion to suppress, challenging the search warrant upon which Medway relied to search her basement residence. The court held a hearing on her motion and later denied it on the basis that Medway properly searched Amodio's

residence pursuant to a valid warrant. Amodio's possession charge was tried to a jury which found her guilty. The trial court sentenced Amodio to three years of community control.

{¶4} Amodio now appeals and raises two assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT ERRED TO THE PREJUDICE OF [AMODIO] BY DENYING HER MOTION TO SUPPRESS, WHERE [AMODIO] HAD A REASONABLE EXPECTATION OF PRIVACY IN THE SEPARATELY-SECURED LEASED BASEMENT APARTMENT, WHICH WAS NOT SPECIFIED IN THE SEARCH WARRANT OBTAINED BY, OR IN THE WARRANT AFFIDAVIT SUBMITTED TO THE JIDGE (sic) BY, THE MEDWAY DEA.

{¶5} In her first assignment of error, Amodio argues that the trial court erred by denying her motion to suppress. She argues that the police violated her Fourth Amendment rights by searching the Vanhauters' basement because the basement was her separately-secured living area and the warrant the police executed did not extend to it. We disagree.

{¶6} The Ohio Supreme Court has held that:

[a]ppellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning*, 1 Ohio St.3d 19 (1982). Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

*State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. Accordingly, this Court reviews the trial court's factual findings for competent, credible evidence and considers the court's legal conclusions de novo. *State v. Conley*, 9th Dist. No. 08CA009454, 2009-Ohio-910, ¶ 6, citing *Burnside* at ¶ 8.

{¶7} A warrant must be based on probable cause, supported by an oath or affirmation, and contain a particular description of "the place to be searched, and the persons or things to be seized." U.S. Constitution, Fourth Amendment. "In seeking to suppress evidence, a defendant may challenge the probable cause underlying a warrant, the particularity of the warrant itself, or both." *State v. Vu*, 9th Dist. No. 11CA0042-M, 2012-Ohio-746, ¶ 25. "The manifest purpose of this particularity requirement [is] to prevent general searches." *Maryland v. Garrison*, 480 U.S. 79, 85 (1987). "In determining whether a warrant is specific enough, the key inquiry is whether the warrant could reasonably have described the items more precisely." *State v. Overholt*, 9th Dist. No. 02CA0108-M, 2003-Ohio-3500, ¶ 14. "A broad and generic description is valid if it 'is as specific as circumstances and nature of the activity under investigation permit' and enables the searchers to identify what they are authorized to seize." *State v. Armstead*, 9th Dist. No. 06CA0050-M, 2007-Ohio-1898, ¶ 10, quoting *United States v. Harris*, 903 F.2d 770, 775 (10th Cir.1990).

{¶8} The warrant here authorized a search of a residence located at 532 Wolf Avenue and described the residence as "a two (2) story residence with attached two (2) car garage." Amodio argues that the warrant only authorized a search of the first and second floor of the residence, not the basement where she resided. According to Amodio, the basement was a separately-secured living area outside the scope of the warrant.

{¶9} At the suppression hearing, Amodio testified that she rented the basement at 532 Wolf Avenue from the Vanhauters on a monthly basis. Yet, she was not able to produce a copy of any lease agreement she had with the Vanhauters or any receipts for the monthly rent she claimed to pay. Amodio admitted that one could gain access to the basement only through a stairway inside the house and it would not be possible to discern from the outside of the house

that the basement was a separate living area. The house had only one kitchen on the first floor, so Amodio and her daughter cooked their meals and ate upstairs. Moreover, the house had only one laundry room in the basement, so everyone who lived there came downstairs to use the washer and dryer. Amodio testified that the basement door at the top of the stairs was equipped with a lock, but she could not remember if she had locked it on the day the police executed their warrant. Further, Amodio received her mail at the general address of 532 Wolf Avenue. In other words, there was no separate address for the basement unit.

{¶10} James Ascherl, a Medway agent, testified that he helped execute the warrant at 532 Wolf Avenue. Agent Ascherl confirmed that there was only one entrance to the basement of the home from the stairwell that led to the interior of the home. He also testified that the doorway to the basement was not labeled in any way to indicate that it was private or that Amodio lived there. Additionally, Agent Ascherl testified that the door to the basement was not locked when Medway executed its warrant.

{¶11} In support of her argument that Medway's warrant did not extend to the basement of 532 Wolf Avenue, Amodio relies on *State v. Ormsby*, 6th Dist. No. WD-89-75, 1991 WL 30659 (Mar. 8, 1991). In *Ormsby*, the Sixth District held that a search warrant for a two-story residence did not extend to a separate living area the police discovered on the second floor when they executed the warrant. The Sixth District concluded that the officers knew or should have known that the second floor was a separate living quarter. *Ormsby* at *1-2. Unlike this case, however, the separate living area in *Ormsby* contained its own kitchenette and outside stairwell that led from the doorway of the second floor to the ground. *Id.* The separate entrance to the second floor was visible from the outside and the only point of egress between the first and second floors on the inside of the home "was clearly not a commonly used egress." *Id.* at *2.

The Sixth District has since distinguished *Ormsby* from a case in which officers were able to enter a basement by walking down a staircase on the interior of the home and stepping through a downstairs door. *State v. Owens*, 6th Dist. No. H-93-025, 1994 WL 159481, *3 (Apr. 29, 1994). *Ormsby* does not control the result here.

**{¶12}** The trial court denied Amodio's motion to suppress on the basis that Medway's warrant extended to the entire residence at 532 Wolf Avenue and the basement area did not constitute a separately-secured area. Based on our review of the record, the trial court did not err by denying Amodio's motion. *See id. Accord State v. Scott*, 6th Dist. No. L-88-323, 1989 WL 100995, *2 (Sept. 1, 1989) ("[I]n a multiple occupancy situation where more than one family shares the common living areas of a single family dwelling but have separate bedroom quarters, courts have held that a single warrant describing the entire premises is valid and justifies a search of the entire premises."). The Vanhauters' basement was accessible to anyone who lived in the home and all of the residents of the home used the laundry room in the basement. Although Amodio slept in the basement, she used the upstairs kitchen to store and cook her food, received her mail at the general residence address, and did not take measures to lock the door to the basement before leaving. Amodio's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

> THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE JURY'S VERDICT OF "GUILTY" AS TO THE CHARGED POSSESION (sic) OF DRUGS (OXYCODONE) OFFENSE, AND THAT CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶13}** In her second assignment of error, Amodio argues that her possession conviction is based on insufficient evidence and is against the manifest weight of the evidence. We disagree.

**{¶14}** In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus; *see also State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "In essence, sufficiency is a test of adequacy." *Thompkins*, 78 Ohio St.3d at 386.

**{¶15}** "No person shall knowingly obtain, possess, or use a controlled substance." R.C. 2925.11(A). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). Amodio does not dispute that Oxycodone is a controlled substance or that Medway found Oxycodone in the basement of 532 Wolf Avenue. Instead, she argues that her conviction is based on insufficient evidence because the State failed to prove that she knowingly possessed the Oxycodone.

**{¶16}** "Possession 'may be constructive as well as actual. Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession.'" *State v. Kendall*, 9th Dist. No. 25721, 2012-Ohio-1172, ¶ 14, quoting *State v. Hankerson*, 70 Ohio St.2d 87 (1982), syllabus. "[T]he crucial issue is not whether the accused had actual physical contact with the article concerned, but whether the accused was capable of exercising dominion [and] control

over it." *State v. Graves*, 9th Dist. No. 08CA009397, 2011-Ohio-5997, ¶ 15, quoting *State v. Ruby*, 149 Ohio App.3d 541, 2002-Ohio-5381, ¶ 30 (2d Dist.). "Circumstantial evidence is sufficient to support the elements of constructive possession." *State v. Williams*, 9th Dist. No. 25286, 2011-Ohio-4488, ¶ 7.

{¶17} Agent Ascherl testified that Medway agents found an adult's bedroom in the basement of 532 Wolf Avenue and attributed the room to Amodio due to the presence of women's clothing and mail addressed to Amodio. Agent Ascherl discovered a marijuana grinder and marijuana cigarettes on top of a nightstand next to Amodio's bed. The nightstand had a lower compartment with glass doors on it. Inside the compartment, Agent Ascherl found syringes and a burnt metal spoon with white residue. He also found several syringes inside a pop bottle in the trash can in Amodio's room.

{¶18} Medway Director David Smith testified that he searched the downstairs bathroom when Medway executed its warrant. On top of one of the bathroom cabinets, Director Smith discovered three or four syringes, a cotton swab, and a burnt spoon with residue on it. Director Smith testified that he spoke with Amodio when she arrived home during the search. Amodio admitted to Director Smith that she was addicted to OxyContin,[1] the spoons he found were hers, and that the residue on the spoons was OxyContin. Agent Ascherl also was present for the conversation between Director Smith and Amodio. Agent Ascherl confirmed that Amodio said she was "hooked on OxyContin" and "sort of sheepishly admitted that she was responsible for [the spoons] * * *."

---

[1] Various witnesses throughout the trial referred to OxyContin rather than Oxycodone. Because Amodio does not raise the discrepancy, we merely note it for purposes of clarification.

{¶19} Viewing the evidence in a light most favorable to the State, we must conclude that a rational trier of fact could have found that the State proved that Amodio knowingly possessed Oxycodone. Agents from Medway found two burnt spoons with residue as well as syringes in the nightstand directly next to Amodio's bed as well as in her bathroom. Further, there was testimony that Amodio confessed to being addicted to OxyContin and to being responsible for the spoons in the basement. Amodio's argument that her conviction is based on insufficient evidence lacks merit.

{¶20} In determining whether a conviction is against the manifest weight of the evidence an appellate court:

> must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. *Thompkins*, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and can disagree with the factfinder's resolution of the conflicting testimony. *Id.* Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

{¶21} Amodio argues that her possession conviction is against the manifest weight of the evidence because the evidence showed that many people had access to the basement and any one of them could have left the Oxycodone there. Amodio testified that she was in a drug

treatment program and that the spoons Medway found did not belong to her. According to Amodio, she suspected that the Vanhauters began to abuse drugs again before Medway executed its search and believed that they were responsible for the evidence Medway discovered in the basement. Amodio testified that she caught Kristen Vanhauter looking for syringes in the basement on at least one occasion. Amodio admitted, however, that she never told the police during their investigation that she saw Kristen looking for a syringe.

{¶22} Scott Swisher, Amodio's boyfriend, also testified that Amodio was not using drugs at the time Medway executed its warrant. Swisher claimed to have seen Christopher Vanhauter enter the downstairs bathroom on the morning of the search. He also claimed that he saw Christopher smoke crack in the basement laundry room on another occasion. Swisher testified that he never told the police about observing either incident because they never asked.

{¶23} Amodio denied ever telling Director Smith that she was currently addicted to drugs or that the spoons in the basement belonged to her. Her testimony directly conflicted with the testimony of Director Smith and Agent Ascherl. This Court has recognized that "[a] jury is free to believe or reject the testimony of each witness, and issues of credibility are primarily reserved for the trier of fact." *State v. Rice*, 9th Dist. No. 26116, 2012-Ohio-2174, ¶ 35. Based on our review of the record, we cannot conclude that the jury lost its way by choosing to believe the testimony of the Medway agents and concluding that Amodio knowingly possessed Oxycodone. This is not the exceptional case in which the jury lost its way by convicting Amodio. *Martin*, 20 Ohio App.3d at 175. Therefore, Amodio's second assignment of error is overruled.

III.

**{¶24}** Amodio's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

WHITMORE, P. J.
DICKINSON, J.
CONCUR

APPEARANCES:

JOSEPH F. SALZGEBER, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW KERN, Assistant Prosecuting Attorney, for Appellee.