[Cite as *State v. Robinson*, 2016-Ohio-7823.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## DEFIANCE COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,          CASE NO. 4-16-10

    v.

JAMISH L. ROBINSON,          O P I N I O N

    DEFENDANT-APPELLANT.

---

STATE OF OHIO,

    PLAINTIFF-APPELLEE,          CASE NO. 4-16-11

    v.

JAMISH L. ROBINSON,          O P I N I O N

    DEFENDANT-APPELLANT.

---

**Appeals from Defiance County Common Pleas Court**
**Trial Court Nos. 15 CR 12248 and 15 CR 12140**

**Judgments Affirmed**

**Date of Decision: November 21, 2016**

---

APPEARANCES:

    *W. Alex Smith* **for Appellant**

    *Russell R. Herman* **for Appellee**

**PRESTON, J.**

{¶1} Defendant-appellant, Jamish L. Robinson ("Robinson"), appeals the April 20, 2016 judgment entries of sentence of the Defiance County Court of Common Pleas. On appeal, he argues that the trial court erred by denying his motions to suppress evidence seized as a result of the execution of a search warrant that Robinson argues was not based on probable cause. For the reasons that follow, we affirm the judgments of the trial court.

{¶2} These cases stem from the execution of a search warrant issued for Robinson's residence, after investigators learned that Robinson was the manager of Talk-N-Win, a suspected illegal-gambling establishment located at the Northtowne Mall in Defiance, Ohio. On February 5, 2015, the Defiance County Grand Jury indicted Robinson on: four counts of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1), (C)(1)(a), fourth-degree felonies; one count of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(1), (C)(1)(b), a third-degree felony; three counts of trafficking in drugs in violation of R.C. 2925.03(A)(1), (C)(2)(a), fifth-degree felonies; two counts of aggravated possession of drugs in violation of R.C. 2925.11(A), (C)(1)(a), fifth-degree felonies; and one count of possession of cocaine in violation of R.C. 2925.11(A), (C)(4)(a), a fifth-degree felony. (Case No. 15 CR 12140, Doc. No. 1). That case was assigned case No. 15

CR 12140, and Robinson pled not guilty to the counts of the indictment. (*See* Case No. 15 CR 12140, Doc. No. 4).

{¶3} On May 13, 2015, the Defiance County Grand Jury indicted Robinson on four counts of receiving stolen property in violation of R.C. 2913.51(A), fourth-degree felonies. (Case No. 15 CR 12248, Doc. No. 1). That case was assigned case No. 15 CR 12248, and Robinson pled not guilty to the counts of that indictment. (*See* Case No. 15 CR 12248, Doc. No. 5).

{¶4} On October 19, 2015, Robinson filed motions to suppress evidence in each case. (Case No. 15 CR 12140, Doc. No. 15); (Case No. 15 CR 12248, Doc. No. 7). In those identical motions, Robinson argued that the search warrant was not supported by probable cause because there was no evidence that illegal gambling took place at his residence or that any part of Talk-N-Win was run out of his residence. (*Id.*); (*Id.*). The trial court held a hearing on Robinson's motions to suppress on November 24, 2015. (Nov. 24, 2015 Tr. at 3). The trial court denied Robinson's motions to suppress on December 7, 2015. (Case No. 15 CR 12140, Doc. No. 16); (Case No. 15 CR 12248, Doc. No. 8).

{¶5} The trial court held a change-of-plea hearing on February 9, 2016. (Feb. 9, 2016 Tr. at 2). Pursuant to a plea agreement, Robinson pled no contest: in case No. 15 CR 12140, to the count of possession of cocaine in violation of R.C. 2925.11(A), (C)(4)(a), and to one of the counts of aggravated possession of drugs

in violation of R.C. 2925.11(A), (C)(1)(a); in case No. 15 CR 12248, to two of the counts of receiving stolen property in violation of R.C. 2913.51(A).  (*Id.* at 4-5, 11). The trial court accepted Robinson's pleas and found him guilty on those counts.  (*Id.* at 12-13); (Case No. 15 CR 12140, Doc. No. 18); (Case No. 15 CR 12248, Doc. No. 10).

{¶6} On April 12, 2016, the trial court sentenced Robinson and, consistent with the plea agreement, dismissed the remaining counts of the indictments.  (Apr. 12, 2016 Tr. at 2, 5); (Case No. 15 CR 12140, Doc. No. 26); (Case No. 15 CR 12248, Doc. No. 18).  The trial court filed its judgment entries of sentence on April 20, 2016.  (Case No. 15 CR 12140, Doc. No. 26); (Case No. 15 CR 12248, Doc. No. 18).

{¶7} Robinson timely filed notices of appeal in each case.  (Case No. 15 CR 12140, Doc. No. 23); (Case No. 15 CR 12248, Doc. No. 15).  He raises one assignment of error for our review.

### Assignment of Error

**The trial court erred when they [sic] overruled the motion to suppress evidence in violation of the 4th and 14th Amendment [sic] to the United States Constitution and Article I Section 14 of the Ohio Constitution.**

{¶8} In his sole assignment of error, Robinson argues that the trial court erred by denying his motion to suppress because the "[search] warrant should not have been issued due to insufficient, credible information in the supporting affidavit."

-4-

(Appellant's Brief at 5).  Specifically, Robinson argues "that there was no indication of criminal activity occurring in the home when the target was Mr. Robinson's place of employment."  (*Id.*).

**{¶9}** A review of the denial of a motion to suppress involves mixed questions of law and fact.  *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8.  At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses.  *Id.  See also State v. Carter*, 72 Ohio St.3d 545, 552 (1995).  When reviewing a ruling on a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence."  *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982).  With respect to the trial court's conclusions of law, however, our standard of review is de novo, and we must independently determine whether the facts satisfy the applicable legal standard.  *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

**{¶10}** Robinson argues that the search warrant was not supported by probable cause, in violation of his constitutional rights.  The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution generally prohibit warrantless searches and seizures, and any evidence obtained during an unlawful search or seizure will be excluded from being used against the defendant.  *State v. Jenkins*, 3d Dist. Union No. 14-10-10, 2010-Ohio-5943, ¶ 9;

*State v. Steinbrunner*, 3d Dist. Auglaize No. 2-11-27, 2012-Ohio-2358, ¶ 12. "Neither the Fourth Amendment to the United States Constitution nor Section 14, Article I of the Ohio Constitution explicitly provides that violations of its provisions against unlawful searches and seizures will result in the suppression of evidence obtained as a result of such violation, but the United States Supreme Court has held that the exclusion of evidence is an essential part of the Fourth Amendment." *Jenkins* at ¶ 9, citing *Mapp v. Ohio*, 367 U.S. 643, 649, 81 S.Ct. 1684 (1961) and *Weeks v. United States*, 232 U.S. 383, 394, 34 S.Ct. 341 (1914).

{¶11} "A warrant must be based on probable cause, supported by an oath or affirmation, and contain a particular description of 'the place to be searched, and the persons or things to be seized.'" *State v. Amodio*, 9th Dist. Medina No. 11CA0048-M, 2012-Ohio-2682, ¶ 7, quoting the Fourth Amendment to the U.S. Constitution. "The probable cause standard falls below both the reasonable doubt and preponderance of the evidence standards." *State v. Ortega*, 3d Dist. Hancock No. 5-11-46, 2012-Ohio-5953, ¶ 25. The Supreme Court of Ohio articulated the probable-cause standard required to support a search warrant:

> In determining the sufficiency of probable cause in an affidavit submitted in support of a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before

him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place."

*State v. George*, 45 Ohio St.3d 325 (1989), paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317 (1983). In other words, "[t]he amount of proof sufficient for a probable cause determination does not necessarily require certainty that criminal activity is occurring at the defendant's premises." *State v. Garza*, 3d Dist. Henry No. 7-13-04, 2013-Ohio-5492, ¶ 32. Only the probability—and not a prima facie showing—of criminal activity is the standard of probable cause. *Id.*, citing *George* at 329.

{¶12} The Supreme Court of Ohio also articulated the standard applied in reviewing the sufficiency of probable cause:

In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a *de novo* determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In

conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant.

*George* at paragraph two of the syllabus, citing *Gates*, 462 U.S. 213, 103 S.Ct. 2317.

**{¶13}** We conclude that the judge who issued the search warrant had a substantial basis for concluding that probable cause existed. Special Agent Edward Biederstedt ("Biederstedt") of the Bureau of Criminal Identification and Investigation swore to the affidavit supporting the search warrant application. (Nov. 24, 2015 Tr., Ex. 1). Biederstedt stated that he has 27 years of law-enforcement experience and that he had good cause to believe that Robinson's residence contained evidence of illegal gambling, money laundering, and engaging in a pattern of corrupt activity. (*Id.* at 1-3). Biederstedt averred that he assisted Major Case Investigator Damon Roberts ("Roberts") in the covert investigation of Talk-N-Win. (*Id.*). The affidavit details visits that Roberts made to Talk-N-Win on November 29 and 30, 2014, during which Roberts used covert funds to obtain a "player's card" to play games at gaming terminals. (*Id.* at 4-9). During each of those visits, Roberts asked that a certain sum of money be placed on his player's card, then he played

games at gaming terminals and, when he was finished playing, retrieved winnings from his player's card in excess of the initial sum on his player's card. (*Id.*).

{¶14} The affidavit also details a visit that Biederstedt and Roberts made to Talk-N-Win on December 14, 2014. (*Id.* at 9-11). During that visit, they observed "behind the counter/desk" a man later identified as Robinson. (*Id.* at 9). The amount on Biederstedt's player's card increased as he played games at gaming terminals, and he eventually retrieved winnings from his player's card in excess of the initial sum on his player's card. (*Id.*). When Biederstedt approached the counter with his player's card after ending play, there was a different person—a female—behind the counter. (*Id.* at 10-11). Roberts and Biederstedt were at Talk-N-Win for approximately 35 minutes. (*Id.* at 9, 11). Biederstedt averred that he "received previous credible source information that Jamish Robinson is the Manager of Talk-N-Win." (*Id.* at 11).

{¶15} Biederstedt also averred that, on December 16, 2014, he and a deputy observed Robinson leave his residence—an apartment—in a vehicle registered to him. (*Id.*). The vehicle went from the "residence to the rear parking lot of the Northtowne Mall, near the entrance to the Talk-N-Win." (*Id.*). Biederstedt later observed Robinson "in front of the entrance to the Talk-N-Win." (*Id.*). "A short time later Robinson exited the rear entrance of the mall and entered back in his

vehicle." (*Id.*). He exited the mall parking lot and returned to his residence. (*Id.*). Biederstedt continues in his affidavit:

7. Special Agent Biederstedt states that the evidence obtained from this investigation has provided information concerning illegal gambling in the Defiance, Defiance County, Ohio area.

8. Special Agent Biederstedt is aware that illegal gambling activities involve the transfer of large quantities of cash and such transactions involve records and documents relating to illegal gambling and accompanying cash transfers.

9. Special Agent Biederstedt holds personal knowledge–that individuals involved in gambling activities maintain log books, records, payment receipts, notes, customer lists, ledgers, and other records and documents, stored on their computers in electronic format. Special Agent Biederstedt is also aware that these records may be kept and stored at the personal residences of the owners and/or managers of the business. Through the technology available today individuals can access records and perform business functions through the leisure of their home residence.

10. Special Agent Biederstedt [sic] personal experience and training, is aware that individuals involved in illegal gambling activity and/or

money laundering may maintain their own security by use of firearms and other weapons.

(*Id.*).

**{¶16}** We conclude that the judge who issued the search warrant had a substantial basis for concluding that, given all the circumstances set forth in Biederstedt's affidavit, there was a fair probability that evidence of illegal gambling, money laundering, and engaging in a pattern of corrupt activity would be found at Robinson's residence. During their investigation, Biederstedt and Roberts engaged in illegal gambling at Talk-N-Win. Biederstedt observed Robinson behind the counter/desk at Talk-N-Win and learned during his investigation that Robinson was the manager of Talk-N-Win. He also observed Robinson leave his residence, enter Talk-N-Win for a short time, then return to his residence. Biederstedt also averred that today's technology allows managers of illegal gambling operations to perform business functions remotely, including from their homes. We hold that, given all of these circumstances, the issuing judge had a substantial basis for concluding that probable cause existed. *See State/City of Alliance v. Birch*, 5th Dist. Stark No. 1997CA00333, 1998 WL 525799, *3 (Mar. 30, 1998) ("find[ing] sufficient evidence to support probable cause for the issuance of the search warrant" for the residence of the defendant, who was observed conducting gambling activities at a lounge and travelling between his residence and the lounge, and who told an officer

who placed a bet that "he had to go home to 'get the odds and the lines, the latest from Vegas'").

{¶17} For these reasons, the trial court did not err in denying Robinson's motions to suppress. Robinson's assignment of error is overruled.

{¶18} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgments of the trial court.

***Judgments Affirmed***

**WILLAMOWSKI and ROGERS, J.J., concur.**

**/jlr**