OPINION
{¶ 1} Defendant-appellant, Dale Metzger ("Metzger") appeals the judgments of the Van Wert County Court of Common Pleas denying his motion to suppress evidence seized during the execution of a search warrant. We affirm the trial court's judgments for the reasons which follow.
 {¶ 2} This appeal involves two separate controlled buys at the residence of Terry Craig ("Craig") in October 2004. During both of the buys, Jeffrey Stocklin ("Stocklin"), a confidential informant, purchased cocaine.
 {¶ 3} Following the two controlled buys, Kyle Fittro ("Investigator Fittro"), an investigator at the West Central Ohio Crime Task Force, submitted an affidavit to obtain a warrant to search a residence at 317 South Canal Street, Delphos, Ohio. The residence consisted of a multi-family dwelling, therefore, the affidavit specified the north-most door of the residence which was Metzger's residence. The affidavit provided in pertinent part:
Investigator Fittro of the West Central Ohio Crime Task Forceand Police Officers of the Delphos Police Department havereceived numerous tips about DALE METZGER and TERRY CRAIG sellingillegal drugs including Marijuana and Cocaine.
 A confidential informant [Stocklin] * * * volunteered topurchase Cocaine from TERRY CRAIG. * * *
 On October 6, 2004, Officers of the West Central Ohio CrimeTask Force, * * * did, in fact, go to TERRY CRAIG's house uponthe information that TERRY CRAIG could get Cocaine for[Stocklin]. On this particular date, [Stocklin] went to TERRYCRAIG's residence and gave TERRY CRAIG West Central Ohio CrimeTask Force confidential funds with the understanding that TERRYCRAIG would leave the residence, purchase the Cocaine at adifferent residence and then bring the Cocaine back to[Stocklin]. On this particular date Investigators from the WestCentral Ohio Crime Task Force and the Delphos Police Departmentdid observe TERRY CRAIG leave his residence and go to 317 SouthCanal Street, Delphos, Van Wert County, Ohio. TERRY CRAIG was atthis residence for approximately five (5) minutes. At this time,TERRY CRAIG left and returned back to his residence where he gave[Stocklin] the Cocaine.
 On October 14, 2004, Officers of the West Central Ohio CrimeTask Force * * * did, in fact, go to TERRY CRAIG's house upon theinformation that TERRY CRAIG could get cocaine for [Stocklin]. Onthis particular date, [Stocklin] went to TERRY CRAIG's residenceand gave TERRY CRAIG * * * confidential funds with theunderstanding that TERRY CRAIG would leave the residence,purchase the Cocaine at a different residence and then bring theCocaine back to [Stocklin]. On this particular date Investigatorsfrom the West Central Ohio Crime Task Force and the DelphosPolice Department did observe TERRY CRAIG leave his residence andgo to 317 South Canal Street, Delphos, Van Wert County, Ohio. Atthis time, an Officer from the Delphos Police Department was in aposition to observe the front of the residence at 317 South CanalStreet, Delphos, Van Wert County, Ohio. This officer did observeTERRY CRAIG enter the north most door located inside the commonporch area of this location. Shortly thereafter, this Officer didobserve TERRY CRAIG exit the north most door, enter his vehicleand begin to leave the residence. Investigators were able tofollow TERRY CRAIG back to his residence where TERRY CRAIG turnedthe Cocaine over to [Stocklin].
 After this controlled buy had occurred, Affiant spoke indetail with [Stocklin]. [Stocklin] explained to Affiant that[Stocklin] knew that TERRY CRAIG was going to DALE METZGER'shouse on South Canal Street to purchase the Cocaine.
 On or about October 12, 2004 Affiant received a phone callfrom [Nathan Diltz]. This particular C.I. has proven to bereliable in the past. [Diltz] advised Affiant that TERRY CRAIGwas getting his Cocaine from DALE METZGER who lived at 317 SouthCanal Street in the north most apartment.
 {¶ 4} Judge Steele of the Van Wert County Common Pleas Court issued the warrant to search Metzger's residence. During the execution of the search warrant, law enforcement officers found cocaine, drug paraphernalia, money, and weapons.
 {¶ 5} On November 5, 2004, the grand jury indicted Metzger in Case No. 15-05-15 for possession of cocaine, a violation of R.C.2925.11(A)(C)(4)(c) and a felony of the third degree with a specification that Metzger derived $3,150 cash from a felony drug offense; and having a weapon while under a disability, a violation of R.C. 2923.13(A)(3), and a felony of the fifth degree.
 {¶ 6} Metzger filed a motion to suppress the evidence obtained during the execution of the search warrant. The trial court held a suppression hearing. Thereafter, Metzger requested an opportunity to present additional evidence. The trial court granted Metzger's request and held a second suppression hearing. After hearing the additional testimony, the trial court denied Metzger's motion to suppress.
 {¶ 7} In addition to the foregoing charges, a bill of information was filed against Metzger in Case No. 15-05-17 for trafficking in cocaine, a violation of R.C. 2925.03(A)(C)(4)(a) and a felony of the fifth degree. The charge stemmed from a confidential informant's purchase of cocaine during a controlled buy on June 3, 2005.
 {¶ 8} Pursuant to an agreement, Metzger pled no contest to the possession of cocaine charge with the specification that he derived $3,150 cash from a felony drug offense in Case No. 15-05-15, and to trafficking in cocaine in Case No. 15-05-17. The state dismissed the charge of having a weapon while under a disability in Case No. 15-05-15. The trial court then found Metzger guilty in both cases and sentenced Metzger to four years imprisonment in Case No. 15-05-15 and eleven months imprisonment in Case No. 15-05-17. The trial court ordered that Metzger serve the sentences concurrently.
 {¶ 9} Metzger now appeals the trial courts denial of the motion to suppress and sets forth one assignment of error for our review.
 ASSIGNMENT OF ERROR NO. I The trial court erred in denying Appellant's motion tosuppress.
 {¶ 10} In his sole assignment of error, Metzger argues that Investigator Fittro's affidavit in support of the search warrant contained several false statements that he either knew were false or were made with reckless disregard for the truth and that those statements should be excluded from the affidavit. Metzger further maintains that with the exclusion of those false statements, the remainder of the affidavit lacked probable cause to support a search warrant.
 {¶ 11} As a preliminary matter, we note that Metzger's sole assignment of error deals only with the suppression hearing in Case No. 15-05-15. Since Case No. 15-05-17 arose after the suppression hearings and Metzger has failed to assert any assignments of error regarding that case, we affirm the trial court's judgment in that case.
 {¶ 12} The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
 {¶ 13} Suppression of evidence is appropriate when `"the magistrate or judge * * * was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth * * * '."State v. George (1989), 45 Ohio St.3d 325, 331, 544 N.E.2d 640, citations omitted. "`Reckless disregard' means that the affiant had serious doubts about the truth of an allegation." State v.McKnight, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, at ¶ 31, citing United States v. Williams (C.A. 7, 1984),737 F.2d 594, 602.
 {¶ 14} Metzger asserts that Investigator Fittro's affidavit was false because it stated that Stocklin had told him that he "knew" Craig was getting his cocaine from Metzger. However, Investigator Fittro testified at the suppression hearing that Stocklin had told him he "believed" Craig was getting his cocaine from Metzger. Metzger also asserts that Investigator Fittro's statements were made with reckless disregard for the truth because Investigator Fittro had just met Stocklin in September 2004, Investigator Fittro had not asked Stocklin about his history with Metzger, and Investigator Fittro did not ask Stocklin his basis for believing the cocaine came from Metzger.
 {¶ 15} Metzger also maintains that Investigator Fittro's affidavit was false because the affidavit stated that Diltz had told Investigator Fittro that Craig obtained his cocaine from Metzger. Diltz, however, testified that he told Investigator Fittro that Metzger lived in one of the apartments on South Canal Street and not that Metzger sold cocaine. Further, after being shown Investigator Fittro's affidavit, Diltz testified that he did not make the statements attributed to him. Consequently, Metzger maintains that he presented sufficient evidence that Investigator Fittro knowingly placed false statements in his affidavit.
 {¶ 16} The following are the disputed portions of Investigator Fittro's affidavit:
[Stocklin] explained to [Investigator Fittro] that [Stocklin]knew that TERRY CRAIG was going to DALE METZGER's house onSouth Canal Street to purchase the cocaine.
* * *
On or about October 12, 2004 [Investigator Fittro] received aphone call from an individual who hereafter will be called[Diltz]. This particular C.I. has proven to be reliable in thepast. [Diltz] advised [Investigator Fittro] that TERRY CRAIGwas getting his Cocaine from DALE METZGER who lived at 317 SouthCanal Street in the north most apartment.
Emphasis added.
 {¶ 17} At the suppression hearing, Investigator Fittro testified that he met with Stocklin in the end of September 2004 and Stocklin stated that he could purchase cocaine from Craig. According to Investigator Fittro, Stocklin had said that Craig would probably need to leave his residence and go somewhere else to obtain the cocaine, and then Craig would bring the cocaine back to his residence and complete the transaction.
 {¶ 18} Investigator Fittro testified that on October 6, 2004, Stocklin went to Craig's residence. Thereafter, Craig left the residence and investigators followed him to 317 South Canal Street. Craig was at 317 South Canal Street for approximately five minutes, then left and returned to his residence. Craig then gave Stocklin the cocaine. Investigator Fittro testified that he had spoken to Stocklin following the first controlled buy and Stocklin had told him "he believed that Terry Craig was going to Dale Metzger's house to get the cocaine." Emphasis added.
 {¶ 19} According to Investigator Fittro, a second controlled buy occurred on October 14, 2004, and during that buy a Delphos Police Officer set up in a "wooded area" to watch Metzger's front door. Investigator Fittro testified that Stocklin went to Craig's residence and gave Craig money, after which Craig left his residence and went directly to 317 South Canal Street. According to Investigator Fittro, a police officer watched Craig enter the north most door of the residence. Shortly thereafter Craig left and returned to his own residence, where he gave Stocklin cocaine. Investigator Fittro further testified that after "debriefing" the confidential informant that "once again [Stocklin] expressed to me that he knew that Terry Craig was going to Dale Metzger's to get the cocaine, however, he could not go directly with [Metzger]." Emphasis added.
 {¶ 20} Stocklin testified that he "probably" told Investigator Fittro that Craig was getting drugs from Metzger, however, he further testified, "it was just a wild guess." Stocklin testified that he had never met Metzger. Nevertheless, Stocklin testified that he knew that Craig was getting the drugs from Metzger, even though Craig had not told him that was where the drugs for the October 6 and 14 purchases came from, because Stocklin had bought drugs from Craig in the past and on those past purchases Craig had told him that he had gotten the drugs from Metzger.
 {¶ 21} At the suppression hearing, Investigator Fittro testified that Diltz called on a matter unrelated to the present case and that during their conversation Investigator Fittro asked Diltz whether he knew who at South Canal Street was selling cocaine. According to Investigator Fittro, Diltz explained that Metzger lived at that address. Investigator Fittro further stated that he "asked [Diltz] if he knew that Terry Craig was getting his cocaine from Dale Metzger and he said that he was."
 {¶ 22} Diltz verified that he and Investigator Fittro had a telephone conversation. According to Diltz, the following conversation took place:
[Investigator Fittro] asked me who was selling all the cocainedown on Canal Street and I said I don't know. He said, "Oh youknow, that guy that lives in that house there on Canal Street ifyou are going towards the park on the left hand side, right thereby the railroad tracks, the first set". I said "That Joe kid",because I went school with some kid that use to live down thereright beside Dale. He said, "No that other guy", I said, "Dale",and I said, "His brother Homer lives there too" and that was it.
Diltz maintained that during that conversation he responded to who lived in the apartment on Canal Street, and not who was selling drugs. After being read Investigator Fittro's affidavit, Diltz testified that he had "never said them words, or nothing like that."
 {¶ 23} Investigator Fittro testified that "When I spoke with Mr. Diltz the only part of his testimony that I can understand where he may be confused on that he did not know the address is true. I explained the residence to him, the house that I was asking the questions about, where it was situated, which door that it was by the train tracks. I knew the address of 317 South Canal, he knew exactly the house that I was talking about, described it back to me even in some more detail, then explained to me exactly what I put in this Affidavit."
 {¶ 24} While Investigator Fittro's testimony at the suppression hearing contained some inconsistencies, it did not show that Investigator Fittro's affidavit contained any false statements. Furthermore, although Investigator Fittro only knew Stocklin since September 2004 and did not ask Stocklin how he knew Metzger or that Metzger was selling cocaine, Stocklin's statements were corroborated by other evidence. For instance, an investigator followed Craig to 317 South Canal Street during the first controlled buy and an officer observed Craig enter Metzger's residence during the second controlled buy. Thus, Investigator Fittro's statement that Stocklin told him Craig got the cocaine from Metzger was not made with reckless disregard for the truth.
 {¶ 25} Although the testimony of Diltz and Investigator Fittro differ over whether Diltz told Investigator Fittro that Metzger sold cocaine, that difference does not establish that Investigator Fittro's affidavit contained statements that he either knew were false or which were made with reckless disregard for the truth. The trial court found that Investigator Fittro's affidavit in support of the search warrant was "based upon information received from a reliable confidential informant, reliable information from a second confidential informant, and personal observation by law enforcement officers." Since the trier of fact is in a better position to observe the demeanor of the witnesses and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230,39 O.O.2d 366, 227 N.E.2d 212, paragragh one of the syllabus.
 {¶ 26} Upon review of the record, we conclude that Investigator Fittro's affidavit did not contain information that Investigator Fittro either knew was false or was made with reckless disregard for the truth. Thus, we must next review the entire affidavit to determine whether probable cause existed to issue the search warrant.
 {¶ 27} Metzger claims that the affidavit lacked probable cause to show that the evidence of a crime was likely to be present at Metzger's residence. First, Metzger points out that although an officer saw Craig enter Metzger's residence, the officer never saw Metzger. Further, Investigator Fittro testified that the police officer watched Metzger's residence from a "wooded area", however, there was testimony that there are no woods near Metzger's home. Metzger also states that, even though officers saw Craig go to 317 South Canal Street during the first controlled buy, the officers were unable to see which apartment Craig entered.
An appellate court should give a magistrate's determination of probable cause great deference when determining whether the affidavit in support of the search warrant contained probable cause for the issuance of the search warrant. George,
45 Ohio St.3d at paragraph two of the syllabus, citing Illinois v. Gates
(1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527. "Probable cause to search does not require proof that a crime was committed, merely the fair probability that evidence of a crime will be found at the location described." McKnight,2005-Ohio-6046, at ¶ 41, citing George, 45 Ohio St.3d 325, paragraph one of the syllabus.
 {¶ 28} In the case sub judice, Investigator Fittro had information from Stocklin and Diltz that Metzger was selling cocaine. At the suppression hearing, Investigator Fittro testified that an investigator saw Craig go to 317 South Canal Street during the first controlled buy. Although the investigator did not see which apartment Craig entered during the first controlled buy, an investigator saw Craig travel to 317 South Canal Street. Investigator Fittro also testified that a police officer watched Craig enter Metzger's residence during the second controlled buy. Even though no police officers saw Metzger during either controlled buy, a police officer watched Craig enter Metzger's residence during the second controlled buy. The fact that Investigator Fittro described the officer's observation area as a "wooded area" even though Diltz, Charles Purdy, and Candy Brooks all testified that there were no woods near Metzger's house does not mean that the search warrant lacked probable cause. Investigator Fittro testified at the second suppression hearing that the area of observation contained trees and shrubs, and there was no testimony that the area surrounding Metzger's residence lacked trees and shrubs.
 {¶ 29} Given the evidence of the two confidential informants, and the fact that law officers saw Craig travel to 317 South Canal Street during both controlled buys and observed Craig enter Metzger's residence during the second controlled buy, we find that there was a fair probability that evidence of a crime would be found at the north most apartment of 317 South Canal Street. Consequently, we find that probable cause existed to issue the search warrant. Metzger's sole assignment of error is, thus, overruled.
 {¶ 30} Having found no error prejudicial to appellant herein, in the particulars assigned and argued, we affirm the judgments of the trial court.
Judgments Affirmed.
 Bryant, P.J., and Shaw, J., concur.