[Cite as *State v. Ortega*, 2012-Ohio-5953.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY


STATE OF OHIO,

      PLAINTIFF-APPELLEE,                   CASE NO.  5-11-46

      v.

RAMON ORTEGA, III,                O P I N I O N

      DEFENDANT-APPELLANT.


**Appeal from Hancock County Common Pleas Court**
**Trial Court No. 2010 CR 188**

**Judgment Affirmed**

**Date of Decision:  December 17, 2012**


APPEARANCES:

    *W. Alex Smith*  **for Appellant**

    *Mark C. Miller and Alex K. Treece*  **for Appellee**

**ROGERS, J.**

{¶1} Defendant-Appellant, Ramon Ortega III, appeals the judgment of the Court of Common Pleas of Hancock County convicting him of drug possession and possession of a firearm under disability. On appeal, Ortega argues that the investigating police officers violated his right against self-incrimination and lacked the requisite probable cause to obtain a search warrant for his home. As a result, Ortega asserts that the trial court erroneously overruled his motion to suppress the evidence derived from the search of his home. For the reasons that follow, we affirm the trial court's judgment.

{¶2} On September 14, 2010, the Hancock County Grand Jury indicted Ortega on the following counts: (1) possession of cocaine, in violation of R.C. 2925.11(A), a felony of the fifth degree; and (2) possession of a firearm under disability, in violation of R.C. 2923.13(A)(3), a felony of the third degree.

{¶3} The indictment arose from the investigatory activities of the Metrich drug task force's Hancock County Division, which is a collaborative effort involving the Findlay Police Department, Hancock County Sheriff's Office, and Hancock County Prosecutor. On September 13, 2010, a confidential informant contacted Officer Bryon Deeter, a member of the Findlay Police Department who is assigned to Metrich, and offered to set up a controlled drug buy with Amanda Bish, a resident of Findlay. Officer Deeter accepted the offer and the informant

called Bish seeking crack cocaine. Bish told the informant that she could sell crack cocaine to him, but that she needed the informant to pick her up at her house and take her to another location.

{¶4} After making these arrangements, Officer Deeter and another Metrich officer met the informant, wired him with secret audio and video recording devices, searched his automobile to ensure that no money or drugs were present, and gave him $150.00 of prerecorded money for the drug transaction. The informant then left to meet Bish with Officer Deeter following in an unmarked police vehicle. Throughout the drug buy, Officer Deeter observed the actions of Bish and the informant and was able both to hear the audio from the informant's wire and to contact the informant via telephone.

{¶5} The informant met Bish at an intersection near her home. After getting into the informant's automobile, she directed him to drive to the area around 841 South Cory Street and to park near the house. When they arrived at the location, the informant gave the $150.00 to Bish, who got out of the automobile and went inside the house at 841 South Cory Street. At that time, there were two males walking around the area who entered the house after Bish. Officer Deeter then called the informant, who confirmed that he had picked up Bish and that she had just gone into the house at 841 South Cory Street. Since Bish was inside the house for a longer than expected period, the informant called

her. She told the informant that the drug supplier was not at the house and that she had to wait for him.

{¶6} Shortly after this phone call, Bish returned to the informant's automobile and gave him a small amount of crack cocaine. The informant drove Bish back to her home and then returned to the police station. There, the informant handed over the crack cocaine that he received and the Metrich officers searched both his automobile and his person to ensure that no other drugs or money were present. He described the two males walking around the area and said that when he left, the males were still inside the house. After the informant was done with his narrative account, the Metrich officers drove him back to the location of the drug transaction. Once they reached the location, the informant again confirmed that Bish and the males had entered the house at 841 South Cory Street during the course of the drug transaction.

{¶7} Due to Officer Deeter's observations of the informant's activities, the police sought a search warrant of the property at 841 South Cory Street. The affidavit in support of the search warrant request included Officer Deeter's observations of the drug transaction and stated the involvement of the confidential informant. However, the affidavit did not provide any facts outlining the accuracy of the informant's previous tips. After reviewing the affidavit, the judge issued the search warrant for 841 South Cory Street. The warrant allowed the search of

the "building [and] place" at that address, as well as the person of Ortega, the owner of the property. (Docket No. 17, Exhibit A, p. 1). It also instructed the officers to search for "any deadly weapon or firearm as defined in § 2923.11 R.C. to protect or defend drugs of abuse." *Id.*

**{¶8}** Metrich officers executed the search warrant during the early morning hours of September 14, 2010. At the suppression hearing, Officer Deeter testified that he entered the property after the entry team had already cleared the house and gathered the house's occupants in the living room area. When Officer Deeter went into the house, Ortega was on the floor and already handcuffed. Officer Deeter then took Ortega from the living room through a doorway opening into the kitchen, which is immediately next to the living room.

**{¶9}** While in the kitchen, Officer Deeter testified that the following happened regarding the reading of Ortega's *Miranda* rights:

> Q:     What happened once you sat [Ortega] down at the kitchen table?
>
> A:     Sat him down at the kitchen table. Handed him the warrant, allowed him to review it. Detective Seem [another Metrich officer] was in the living room area and began to speak with the persons in that area and advised them that he was going to advise everyone of their rights. At that point I stopped. I asked Mr. Ortega to listen to Detective Seem as well. When he completed the warning I asked Mr. Ortega if he understood his rights. He stated that he did, and that he would speak with me.

Q: Sitting where you were with Mr. Ortega, were you able to clearly hear the rights that Detective Seem was reviewing with the other individuals?

A: Yes.

Q: Was Detective Seem doing that in a loud voice so everybody in that room could hear?

A: Yes.

Q: Mr. Ortega have any questions about those Miranda warnings?

A: No.

Q: Did you go over anything, any more specific detail about whether or not he needed to speak with you at that point?

A: I just advised him that he didn't have to talk to with [sic] me if he didn't want to. Suppression Hearing Tr., p. 29-30.

Officer Deeter testified that based on his previous interactions with Ortega, "[h]e exhibits a normal ability to function and understand what's going on." *Id*. at 31. As a result, Officer Deeter had no concern that Ortega did not understand the *Miranda* warning that Detective Seem gave.

{¶10} After the reading of Ortega's *Miranda* rights, Ortega started to question what the officers were searching for:

A: * * * He [Ortega] stated – actually he asked me at that point what we were looking for.

Q: What did you tell Mr. Ortega at that point?

-6-

A: That we were there looking for drugs, weapons, or anything related to that.

Q: Did you ask him if any of those things were in the home at that point?

A: Actually he offered up that there was a firearm in his bedroom in a dresser. In a top dresser drawer in his bedroom. *Id*. at 30.

Officer Deeter informed Detective Seem and another officer on the property of Ortega's admission. The officers went to Ortega's bedroom and found the firearm in the location that Ortega described. The investigating officers also discovered cocaine during their execution of the search warrant.

{¶11} On December 21, 2010, Ortega filed a motion to suppress the evidence acquired from his residence on the basis that there was insufficient probable cause to support the issuance of the search warrant. The next day, Ortega filed a motion to suppress his confession to the possession of a firearm on the basis that he was not properly Mirandized by the officers. On March 2, 2011, the trial court conducted a suppression hearing in which Officer Deeter testified as described above. No other witnesses were called to the stand. After considering the evidence, the trial court denied Ortega's motions on May 4, 2011.

{¶12} On August 26, 2011, Ortega withdrew his not guilty pleas and entered no contest pleas to both charges alleged in the indictment. The matter then

proceeded to sentencing. After the sentencing hearing, the trial court sentenced Ortega to a total of ten years and six months in prison on December 12, 2011.

{¶13} Ortega filed this timely appeal, presenting the following assignments of error for our review.

### Assignment of Error No. I

**THE TRIAL COURT ERRED WHEN THEY [SIC] RULED THAT THERE HAD BEEN NO VIOLATION OF MR. ORTEGA'S RIGHT AGAINST SELF-INCRIMINATION. THIS COURT SHOULD REVERSE AND HOLD THE EVIDENCE AND STATEMENTS COLLECTED SHOULD BE SUPPRESSED.**

### Assignment of Error No. II

**THE TRIAL COURT ERRED WHEN THEY [SIC] RULED THAT THERE HAD BEEN SUFFICIENT PROBABLE CAUSE TO ISSUE A SEARCH WARRANT FOR THE HOME. THIS COURT SHOULD REVERSE AND HOLD THE EVIDENCE AND STATEMENTS COLLECTED SHOULD BE SUPPRESSED.**

### Assignment of Error No. I

{¶14} In his first assignment of error, Ortega claims that the trial court should have granted his motion to suppress because the investigating officers violated his right against self-incrimination and obtained information that led to the discovery of his firearm. Specifically, Ortega argues that the police failed to Mirandize him before interrogating him. We disagree.

*Standard of Review for Motions to Suppress*

{¶15} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. The trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given to the evidence presented. *State v. Johnson*, 137 Ohio App.3d 847, 850 (12th Dist. 2000). Therefore, when an appellate court reviews a trial court's ruling on a motion to suppress, it must accept the trial court's findings of fact so long as they are supported by some competent, credible evidence. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100. The appellate court must then review the application of the law to the facts *de novo*. *Id*.

*Miranda Standard*

{¶16} Under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966), a criminal suspect in police custody must be warned of his right to remain silent. *State v. Lather*, 110 Ohio St.3d 270, 2006-Ohio-4477, ¶ 6, citing *Miranda* at 479. Absent such a warning, a suspect's statements during a custodial interrogation are subject to suppression. *In re J.C.*, 173 Ohio App.3d 405, 2007-Ohio-5763, ¶ 14 (2d Dist.). However, if the suspect knowingly, intelligently, and voluntarily waives his *Miranda* rights, then suppression is inappropriate. *State v. Wheatley*, 3d Dist. No. 1-10-75, 2011-Ohio-1997, ¶ 11, citing *Miranda* at 444. To determine

whether a suspect gave a valid waiver, we consider the totality of the circumstances. *State v. Gumm*, 73 Ohio St.3d 413, 429 (1995). Relevant circumstances include "the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *State v. Campbell*, 90 Ohio St.3d 320, 332 (2000).

{¶17} Police officers are not required to provide *Miranda* warnings to every person they question. *In re T.W.*, 3d Dist. No. 9-10-63, 2012-Ohio-2361, ¶ 22, citing *State v. Biros*, 78 Ohio St.3d 426, 440 (1997). Instead, police officers are only required to administer *Miranda* warnings where the individual questioned is subject to "custodial interrogation." *Id.*, quoting *Biros* at 440. To determine if an interrogation is custodial in nature, the court assesses "'how a reasonable man in the suspect's position would have understood his situation.'" *State v. Mason*, 82 Ohio St.3d 144, 153 (1988), quoting *Berkemer v. McCarty*, 486 U.S. 420, 442, 104 S.Ct. 3138 (1984). Accordingly, we apply the following test to determine the existence of a custodial interrogation: "whether, under the totality of the circumstances, a 'reasonable person would have believed that he would not be free to leave.'" *Gumm* at 429, quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870 (1980). Even if a defendant is in custody, *Miranda* still does not bar the admission of the defendant's "volunteered statements." *State v. McGuire*,

80 Ohio St.3d 390, 401 (1997). As such, a defendant's statements before the police begin questioning are considered voluntary and not made in the context of a custodial interrogation. *Id.*

{¶18} First, we consider whether the Metrich officers properly Mirandized Ortega. The record reflects that after moving Ortega to the kitchen, which is immediately next to the living room and through an open doorway, Officer Deeter recognized that Detective Seem was giving *Miranda* warnings to the individuals in the living room. At that time, Officer Deeter instructed Ortega to listen to the warning, which was spoken loudly. Once Detective Seem finished, Officer Deeter asked Ortega whether he understood the warning and Ortega responded affirmatively. In light of these facts, we reject Ortega's claim that he was not properly Mirandized.

{¶19} Second, we assess whether Ortega validly waived his *Miranda* rights in light of the factors articulated in *Campbell*. There is no indication in the record that the officers mistreated or harmed Ortega during the course of the search warrant's execution. Similarly, the record is devoid of references to Officer Deeter making any threats or to a long and arduous interrogation. Rather, the record reveals that Ortega is a middle-aged man with previous experience in the criminal justice system and an ability to understand the English language. The totality of these circumstances suggests that Ortega was able to validly waive his

*Miranda* rights. Further, Ortega did indeed waive those rights by affirmatively indicating that he understood his rights and then offering his incriminating statements. Thus, since Ortega was Mirandized and waived his rights, we find that it was not erroneous for the trial court to refrain from suppressing Ortega's statement regarding the location of the firearm.

{¶20} In addition to claiming that he was not properly Mirandized, Ortega argues that the *Miranda* warning described above falls under the ambit of *Missouri v. Siebert*, 542 U.S. 600, 124 S.Ct. 2601 (2004), which disapproves of the "Mirandize later" strategy. Ortega's contention rests on his suggestion that the entry officers, with their firearms still drawn, asked him immediately after handcuffing him whether there were weapons in the house. But, there is no evidence in the record to reflect that this actually happened. As a result, we are unable to find that *Siebert* applies to this matter.

{¶21} Even if the officers failed to Mirandize Ortega or he failed to validly waive his rights, the result would be the same. A review of the record discloses that Ortega was not being questioned at the time that he offered his self-incriminating statements. After the *Miranda* warning was given, Ortega asked what the officers were searching for. When Officer Deeter responded that they were looking for guns and drugs, Ortega, without questioning by Officer Deeter, volunteered that he had a weapon in his bedroom. *Miranda* does not bar this type

of volunteered statement, so we would reach the same conclusion even if there was a defect in the *Miranda* warning and waiver.

**{¶22}** Accordingly, we overrule Ortega's first assignment of error.

*Assignment of Error No. II*

**{¶23}** In his second assignment of error, Ortega contends that the trial court should have granted his motion to suppress because the judge lacked the requisite probable cause to issue the search warrant for his home. We disagree.

**{¶24}** The Fourth Amendment to the United States Constitution, which applies to the states through the Fourteenth Amendment, provides as follows:

> [The r]ight of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, Section 14 of the Ohio Constitution contains a similar provision, so we construe the protections granted by the United States and Ohio constitutions as coextensive. *See State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, ¶ 47 ("[W]hen provisions of the Ohio Constitution and United States Constitution are essentially identical, we should harmonize our interpretations of the provisions * * *").

**{¶25}** The probable cause standard falls below both the reasonable doubt and preponderance of the evidence standards. *State v. Courtney*, 3d Dist. No. 17-

10-26, 2012-Ohio-989, ¶ 21. Because the standard "only requires the existence of circumstances that warrant suspicion," *id.*, it merely mandates "a showing that a possibility of criminal activity exists, *not* a prima facie showing of criminal activity," *State v. Young*, 146 Ohio App.3d 245, 254 (11th Dist. 2001). In assessing the existence of probable cause, the issuing judge must consider the totality of the circumstances to determine "whether * * * there is a fair possibility that contraband or evidence of a crime will be found in a particular place." *State v. George*, 45 Ohio St.3d 325 (1989), paragraph one of the syllabus.

{¶26} When reviewing the judge's decision to issue a search warrant, we do not substitute our own judgment for that of the judge. *Id.* at paragraph two of the syllabus. Instead, our review is restrained to determining whether "the [judge] had a substantial basis for concluding that probable cause existed." *Id.* Accordingly, we grant "great deference to the [judge]'s determination of probable cause, and doubtful or marginal cases * * * should be resolved in favor of upholding the warrant." *Id.*

{¶27} The affidavit in this matter implicates the actions of a confidential informant. We note that a mere conclusory statement in an affidavit regarding the reliability of an informant is insufficient, by itself, to support the issuance of a warrant. *State v. Gill*, 49 Ohio St.2d 177, 178-79 (1977). Rather, "[t]here must be some basis in the affidavit to indicate the informant's credibility, honesty, or

reliability." *State v. Harry*, 12th Dist. No. CA2008-01-0013, 2008-Ohio-6380, ¶ 20. Courts consider such a basis to be sufficiently present when the affidavit contains "detailed information from [the] informant" or there is "police corroboration of the informant's intelligence through its own independent investigation * * *" *Id.*

{¶28} Here, the affidavit in support of the search warrant included a thorough recapitulation of the relevant facts giving rise to probable cause that drug trafficking was occurring at 841 South Cory Street. Indeed, the affidavit indicated that a confidential informant acted as the buyer in the controlled buy, but failed to state the previous record of the informant in providing accurate tips. However, the affidavit also included the fact that Officer Deeter, the affiant, personally observed all of the events involving the informant. Officer Deeter saw the informant pick up Bish and drive to 841 South Cory Street. Further, he observed Bish enter the house there, along with two other males, and then return to the automobile, where she transferred the crack cocaine to the informant. These surveillance activities proved that the confidential informant's tip in this instance was reliable since Officer Deeter's observations confirmed what the informant stated. *See State v. Richardson*, 4th Dist. No. 08CA3022, 2009-Ohio-923, ¶ 11 (affirming judgment that probable cause supported search warrant where police observed the original informant's activities); *State v. Craft*, 181 Ohio App.3d 150, 2009-Ohio-675, ¶ 14

(12th Dist.) (same); *State v. Williams*, 3d Dist. No. 14-02-13, 2002-Ohio-6288, ¶ 13 (same). As such, the affidavit provided a substantial basis from which the judge could find probable cause.

{¶29} Ortega offers three arguments to suggest that the warrant was invalid here. First, he finds fault in Officer Deeter's failure to include the confidential informant's history of providing accurate tips. This contention is unavailing since it fails to account for Officer Deeter's observation of the drug transaction between the informant and Bish. Such observation amounts to the "police corroboration" that sufficiently supports the issuance of a search warrant. *Harry*, 2008-Ohio-6380, at ¶ 20. This corroboration renders the informant's history of reliability immaterial here.

{¶30} Second, Ortega criticizes various deficiencies in the information that was gleaned from the police's surveillance of the drug transaction and the informant's statements. In particular, he points out that (1) the drug transaction did not occur on the property at 841 South Cory Street; and (2) no one saw any drugs on the property before the request for the search warrant. However, under the probable cause standard, the State was not required to show either of these facts. *See State v. Metzger*, 3d Dist. Nos. 15-05-15, 15-05-17, 2006-Ohio-5161, ¶ 29 (finding that police's observation of controlled buy in which seller entered house and then returned to give drugs to buyer was sufficient to provide probable

cause for search warrant). It merely had to show that there was a possibility of criminal activity at 841 South Cory Street and the evidence discussed above satisfied this requirement. As a result, these deficiencies do not persuade us that the issuing judge lacked probable cause.

{¶31} Third, Ortega claims that the State violated R.C. 2933.23 and R.C. 2933.24 when Officer Deeter failed to provide a copy of the affidavit in support of the search warrant when the police executed the warrant. Neither of these sections of the Revised Code requires the service of the affidavit. Indeed, Crim.R. 41(D) merely mandates that the police serve the warrant. *See also State v. McKeown*, 1st Dist. No. C-790900 (Jan. 21, 1981) (affirming denial of suppression where the defendant claimed constitutional violation arising from police's failure to serve affidavit in support of search warrant). Consequently, we find no error in the failure to serve the affidavit on Ortega.

{¶32} In sum, Officer Deeter's observation of the confidential informant during the course of the controlled buy provided sufficient facts for the judge to find probable cause and issue the search warrant. Ortega's arguments to the contrary are unavailing and we reject them.

{¶33} Accordingly, we overrule Ortega's second assignment of error.

{¶34} Having found no error prejudicial to Ortega, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J. and WILLAMOWSKI, J., concur.**