[Cite as *State v. Fayson*, 2017-Ohio-7793.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,                                    CASE NO. 13-17-08

    PLAINTIFF-APPELLEE,

    v.

MARLOS V. FAYSON,                                 O P I N I O N

    DEFENDANT-APPELLANT.


Appeal from Seneca County Common Pleas Court
Trial Court No. 16-CR-0067

Judgment Affirmed

Date of Decision:  September 25, 2017


APPEARANCES:

    *James W. Fruth* **for Appellant**

    *Angela M. Boes* **for Appellee**

**WILLAMOWKSI, J.**

{¶1} Defendant-appellant Marlos V. Fayson ("Fayson") brings this appeal from the judgment of the Court of Common Pleas of Seneca County denying his motions to suppress. For the reasons set forth below, the judgment is affirmed.

{¶2} On April 27, 2016, the Seneca County Grand Jury indicted Fayson on six counts: 1) Trafficking in Cocaine in violation of R.C. 2925.03(A)(2),(C)(4)(f), a felony of the first degree; 2) Trafficking in Marijuana in violation of R.C. 2925.03(A)(2),(C)(3)(d), a felony of the second degree; 3) Aggravated Trafficking in Drugs in violation of R.C. 2925.03(A)(2),(C)(1)(d), a felony of the first degree; 4) Aggravated Trafficking in Drugs in violation of R.C. 2925.03(A)(2),(C)(1)(b), a felony of the third degree; 5) Possessing Criminal Tools in violation of R.C. 2923.24(A),(C), a felony of the fifth degree; and 6) Endangering Children in violation of R.C. 2919.22(A),(E)(2)(a), a misdemeanor of the first degree. Doc. 2. Fayson entered pleas of not guilty to all of the charges. Doc. 10. On May 27, 2016, Fayson filed a motion to suppress the evidence obtained during a warranted search claiming that the trial court lacked probable cause to issue the warrant. Doc. 15. The State filed its response to the motion on June 30, 2016, and alleged that there was probable cause for the warrant. Doc. 23. The trial court entered a judgment on July 18, 2016, denying the motion to suppress. Doc. 25.

{¶3} On August 8, 2016, Counsel for Fayson filed a motion to withdraw. Doc. 33. The trial court granted the motion and new counsel was appointed. Doc.

{¶35} A second motion to suppress the evidence obtained as a result of the search was filed on September 20, 2016. Doc. 54. The State filed its memorandum in opposition to the motion to suppress on November 4, 2016. Doc. 65. A hearing was held on the second motion to suppress Doc. 115. The trial court overruled the motion to suppress on February 10, 2017. *Id*. On February 27, 2017, Fayson entered a negotiated plea agreement. Doc. 126. Fayson agreed to enter pleas of no contest to the following charges: 1) Trafficking in Cocaine in violation of R.C. 2925.03(A)(2),(C)(4)(a), a felony of the fifth degree; 2) Trafficking in Marijuana in violation of R.C. 2925.03(A)(2),(C)(3)(d), a felony of the second degree; 3) Aggravated Trafficking in Drugs in violation of R.C. 2925.03(A)(2),(C)(1)(d), a felony of the first degree; 4) Aggravated Trafficking in Drugs in violation of R.C. 2925.03(A)(2),(C)(1)(b), a felony of the third degree; 5) Possessing Criminal Tools in violation of R.C. 2923.24(A),(C), a felony of the fifth degree; and 6) Endangering Children in violation of R.C. 2919.22(A),(E)(2)(a), a misdemeanor of the first degree. *Id*. The trial court accepted the change of pleas and entered findings of guilty to all of the negotiated charges. *Id*. The trial court then immediately proceeded to sentence Fayson. Doc. 127. The trial court sentenced Fayson to an aggregate prison term of twelve years. *Id*. Fayson appealed from the denial of the motions to suppress. On appeal, Fayson raises the following assignment of error.

> **The [trial court] erred by denying [Fayson's] initial motion to suppress evidence, as well as [Fayson's] supplemental motion to suppress evidence.**

{¶4} The sole assignment of error challenges the trial court's denial of Fayson's motions to suppress. "An appellate review of the trial court's decision on a motion to suppress involves a mixed question of law and fact." *State v. Fittro*, 3d Dist. Marion No. 9-14-19, 2015-Ohio-1884, ¶ 11.

> **When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Fanning* (1982), 1 Ohio St.3d 19, 1 OBR 57, 437 N.E.2d 583. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard. *State v. McNamara* (1997), 124 Ohio App.3d 706, 707 N.E.2d 539.**

*State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶5} This court notes that unlike many cases involving motions to suppress, this is not a warrantless search, but the result of a search warrant having been granted by a judge. "When a motion to suppress attacks the validity of a search conducted under a warrant, the burden of proof is on the defendant to establish that evidence obtained pursuant to the warrant should be suppressed." *State v. Wallace*, 2012-Ohio-6270, 986 N.E.2d 498, ¶ 27 (7th Dist) citing *State v. Dennis,* 79 Ohio St.3d 421, 426, 683 N.E.2d 1096 (1997).

> **In reviewing the sufficiency of probable cause in an affidavit submitted in support of a search warrant issued by a magistrate, neither a trial court nor an appellate court should substitute its judgment for that of the magistrate by conducting a de novo**

> **determination as to whether the affidavit contains sufficient probable cause upon which that court would issue the search warrant. Rather, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant.**

*State v. George*, 45 Ohio St.3d 325, at paragraph 2 of the syllabus, 544 N.E.2d 640 (1989) citing *Illinois v. Gates*, 462 U.S. 213, 103 St.Ct. 2317, 76 L.Ed.2d 527 (1983).  The question on appeal is not whether this court would find probable cause to issue the search warrant if we were to make the decision.  *State v. Garza*, 3d Dist. Henry No. 7-13-04, 2013-Ohio-5492, ¶ 19.  Instead, our task is to determine whether the trial judge "had a substantial basis for concluding that probable cause existed." *Id.*  In other words, given all the circumstances set forth in the affidavit before it, including the veracity and basis of knowledge of the parties providing the hearsay information, could a trial court find a fair probability that contraband or evidence of a crime will be found in that location.  *Id*. at ¶ 20.

{¶6} In this case, Fayson argues that the trial court should not have granted the request for a search warrant because 1) the information was stale and 2) there was no evidence showing that the confidential informants ("CI") were reliable.  Two different hearings were held on the motion to suppress and the second motion to suppress.  At the July 1, 2016, hearing on the initial motion to suppress, Fayson presented the following testimony.

**{¶7}** Detective Charles Boyer ("Boyer") testified on direct examination by Fayson that he submitted the request for the search warrant and the accompanying affidavit in support of the search warrant to the trial court. July 1, 2016 Tr. 6. Some of the information in the affidavit was information over the last 10 years that had already been adjudicated and was not "fresh information". *Id*. at 7. The information came from three separate CIs. *Id*. The affidavit disclosed none of the identities of the CIs to the trial court. *Id*. Instead, the affidavit merely included paragraphs indicating that the CIs were reliable. *Id*. at 7-8. Boyer admitted that he had submitted no information that would have raised questions about the CIs' reliability. *Id*. at 8-9. Boyer also admitted that he did not cite any specific instances where the CIs were shown to be reliable. *Id*. at 12. The target of the warrant was Fayson. *Id*. at 10. However, Boyer did include some circumstances of activity at the home that did not involve Fayson, but instead involved his brother. *Id*. The purpose for adding the historical information and the family connection was to show that Fayson "always had an affiliation with drug trafficking" and "to establish, historically, certain types of drugs that he dealt, that he's been convicted, previous charges, locations where he sold." *Id*. at 12. Boyer testified that he included a statement about Fayson shooting someone after an unidentified CI told him that the victim of the shooting told the CI that "Teewee" shot him and that Fayson is "Teewee". *Id*. at 13. No information was presented to the court to support that CI's reliability. *Id*.

Boyer admitted that the majority of the information in the affidavit was more than two years old. *Id*. at 17.

{¶8} On cross-examination by the State, Boyer testified that he had been with the Tiffin Police Department for 24 years. *Id*. at 19. He then testified to the execution of the warrant and the items listed on the inventory. *Id*. at 22-26. According to Boyer, for a CI to be considered reliable, the CI would have to complete two successful purchases "corroborated by audio, video, and visual surveillance." *Id*. at 31. The first CI, CI 11, had been used since 2011 and had completed "a substantial amount of cases." *Id*. CI 16-003 told them she could buy drugs from Jesse Hurst ("Hurst") who was getting his supply from Teewee. *Id*. at 33. Upon learning of that, he investigated to find out that Fayson had been released from prison. *Id*. That CI then purchased cocaine and Percocet from Hurst at 184 Second Ave. *Id*. at 35. Within 72 hours of the last purchase, they executed the search warrant. *Id*. Before executing the warrant, Boyer determined that Fayson was residing at 184 Second Ave. I*d*. at 36.

{¶9} On re-direct examination, Boyer admitted that the purchases were made solely from Hurst. *Id*. at 37. Boyer testified the purchases were made at the house where Fayson resided. *Id*. Boyer also indicated that any information about how reliability of a CI is determined was not disclosed to the trial court. *Id*.

{¶10} The State then presented the testimony of Donald Joseph ("Joseph") with the Seneca County Sheriff's Office. *Id*. at 39. Joseph testified that he was

employed as a detective sergeant with the Seneca County Drug Task Force. *Id*. AT 40. Joseph was responsible for the CIs in this case. *Id*. at 42. Joseph testified as follows.

> **The [CI] had picked up [Hurst] at, I believe it's his mother's residence. * * * She picked [Hurst] up and [Hurst] had her drive to Second Avenue, [Fayson's] residence, out back. The [CI] parked out back. [Boyer] and I maintained visual surveillance. We could see from an alley the doors to [Fayson's] house. We watched [Hurst] go in the back side door, if you will, into the residence and come out and get back into the vehicle. The [CI] then dropped [Hurst] back off at the Perry Street residence.**

*Id*. at 43-44. The CI indicated that Hurst was obtaining the drugs from Teewee, which is Fayson's nickname. *Id*. at 44. The Second Avenue address is the home of Fayson and his brother. *Id*. The CI in this purchase had a history of being reliable. *Id*. at 45.

{¶11} On cross-examination Joseph stated that although he was not the affiant in this case, he did not think there was a disclosure about how reliability of a CI would be determined. *Id*. at 47. Joseph admitted that he only observed Hurst enter the residence, but had no idea what happened once he was inside. *Id*. at 47-48. Joseph indicated that he saw no reason to disclose that a CI has a criminal history to the trial court because they can ask if they want to know. *Id*. at 48.

{¶12} A second hearing on the motions to suppress was held on February 8, 2017. At that hearing, Fayson called Hurst to testify. Before Hurst answered any questions other than his name, he claimed his rights under the Fifth Amendment

prohibition against self-incrimination and indicated that he would not be answering any questions. Feb. 8, 2017 Tr. 5-6. Fayson proffered a statement that if Hurst had been required to testified, he would have indicated that he did not obtain drugs from Fayson in March of 2016. *Id*. at 29. The State indicated that Hurst's testimony would indicate that he had purchased the drugs from Fayson to sell to the CI. *Id*. at 32.

{¶13} Fayson then testified on his own behalf. Fayson admitted that at the time of the recent drug purchases in the search warrant, he was residing at 184 Second Ave. and that he had known Hurst for a long time. *Id*. at 9. However, Fayson denied that Hurst came to his residence to obtain drugs. *Id*. at 9-11. Fayson testified that he had not sold or given any drugs to Hurst. *Id*. at 11.

{¶14} On cross-examination, Fayson indicated he had lived at the same address since 2009, except for the time he was in prison from March 2015 until February 2016. *Id*. at 12. Fayson testified that his brother was living with them and was paying the bills from his employment. *Id*. at 13. Fayson admitted that his nickname was Teewee. *Id*. at 19. According to Fayson, the back door leads to a porch, but the house is a duplex. *Id*. at 21. On re-direct, Fayson indicated that once inside the back porch, Hurst could have gone to either door without the police knowing which unit Hurst entered. *Id*. at 27.

{¶15} A review of the affidavit supporting the request for the search warrant listed 48 alleged facts. Ex. 2. The request was submitted to the trial court on March

29, 2016. *Id.* Many of the paragraphs contain information that is irrelevant to the alleged crimes and provide no information other than to show that Fayson has a history with the police and connections to the drug trade.[1] Most of this information could have been just as easily provided by a simple statement as to Fayson's prior convictions. The only information related to this case is provided in paragraphs 33-39, which identifies the source as CI 16-003.[2] This CI indicated that he/she could purchase cocaine and pills from Hurst who obtained them from Teewee. The CI had been working with the task force since March 8, 2016. The CI drove Hurst to Fayson's address, and Hurst entered the back porch. After some time, Hurst came back to the vehicle and gave cocaine and pills to the CI. Boyer swore that since he began utilizing the CI on march 8, 2016, he had found the information provided by the CI "to be reliable [and] accurate." Ex. A at 9.

*Staleness of Information*

{¶16} One of Fayson's arguments is that the affidavit in support of the search warrant contained a large amount of stale information. A basic, fundamental principle of law provides that information in an affidavit for a search warrant must present timely information. *Sgro v. United States*, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932) "The proof must be of facts so closely related to the time of the

---

[1] A good example of this information would be the information found in paragraph 10 from November 2012, that indicated Fayson was the driver in a traffic stop with a passenger who had a prior drug possession conviction. The canine alerted on the vehicle, but when the vehicle was searched, nothing was found.
[2] The other two confidential informants provided information about other instances in the past, with the most recent information being provided in 2013, which led to Fayson's conviction in 2015.

issue of the warrant as to justify a finding of probable cause at that time. *State v. Prater*, 12th Dist. Warren No. CA2001-12-114, 2002-Ohio-4487, ¶ 11. "The test is whether the alleged facts justify the conclusion that certain contraband remains on the premises to be searched." *Id*. at ¶ 12. A review of the warrant shows that there was a substantial amount of information that Boyer classified as "historical". The information was stale and did not make it any more or less likely that the contraband would be found at the location to be searched. However, there was also information provided that multiple drug purchases had been made at the location to be searched within a month of the request for the warrant. Ex. A at 10-11. The most recent purchase had taken place less than three days prior to the affidavit. The information that the purchases were occurring there was supported not only by the statements of the CI, as reported by Boyer, but by the observations of the officers themselves. Allegations were provided that made it probable that contraband and evidence of criminal activity would be found at that location. Thus, the trial court had a substantial basis for issuing the warrant.

### *Reliability of the Confidential Informants*

{¶17} Fayson's second argument is that the affidavit contained no information from which the trial court could determine that the statements of the confidential informants were reliable. A mere conclusory statement alone in an affidavit regarding the reliability of an informant is insufficient to support the

issuance of a warrant. *State v. Gill*, 49 Ohio St. 2d 177, 178-79, 360 N.E.2d 693 (1977).

> **Rather, "[t]here must be some basis in the affidavit to indicate the informant's credibility, honesty, or reliability." * * * Courts consider such a basis to be sufficiently present when the affidavit contains "detailed information from [the] informant" or there is "police corroboration of the informant's intelligence through its own independent investigation * * *".**

*State v Ortega*, 3d Dist. Hancock No. 5-11-46, 2012-Ohio-5953, ¶ 27.

{¶18} Here, a review of the affidavit shows that only the information from the third CI, CI 16-003, is relevant as the others are all about stale information. Boyer did state that he found the information to be reliable and accurate. This alone would not be sufficient pursuant to Ortega. However, the affidavit in paragraph 39 corroborates the information from the CI. Boyer stated that he observed the CI take Hurst to 184 Second Avenue, saw Hurst enter the residence, saw Hurst leave the residence and return to the CI's vehicle. Hurst then gave the cocaine to the CI. A field test was conducted and it tested positive for the presumptive presence of cocaine. This information obtained from the independent investigation of the officers provides corroboration of the CI's information and this was known by the trial court at the time. Thus, the trial court could independently evaluate the reliability of the CI. For this reason, the trial court did not err in considering the information. The assignment of error is overruled.

{¶19} Having found no error prejudicial to the Appellant in the particulars assigned and argued, the assignment of error is overruled. The judgment of the Court of Common Pleas of Seneca County is affirmed.

*Judgment Affirmed*

**PRESTON, P.J. and ZIMMERMAN, J., concur.**

**/hls**